IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No.: 5:13-CR-12-MTT |
| : | |
| KI UN JORDAN a/k/a "LOVE" : | Filed at 3:30 PM |
| : | 1/16 20 14 |
| | Deputy Clerk, U.S. District Court |
| | Middle District of Georgia |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and KI UN JORDAN, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the indictment and information against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant his understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of such a trial. The defendant understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The

defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c) Federal Rules of Criminal Procedure, as follows:

(A) The defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges defendant with ~~Use of Interstate Facility to Promote Prostitution~~ [handwritten: Misprision of a Felony]; in violation of Title 18, United States Code, Section ~~1952(a)(3)~~ [handwritten: 4 K.U.J MMW].

(B) That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to a maximum sentence of up to ~~five (5)~~ [handwritten: three 3] years

2

[handwritten initials: K.U.J / MM]

confinement, a maximum fine of $250,000 or both, and ~~three~~ One (3̶) 1 years of supervised release. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00.

(C) The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office. The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D) The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

3

*K.U.J*

(F)     Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)     Defendant understands, and has fully discussed with defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H)     The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or other collateral review of defendant's sentence in any court. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range, then the defendant shall retain only the right to pursue a timely appeal directly to the Court of Appeals after the District Court imposes its sentence. In the event that the defendant retains the right to a direct appeal, that right is limited to appealing sentencing issues only.

The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's right or obligation to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney appeals the defendant's sentence pursuant to this statute, the defendant is released from defendant's waiver of defendant's right to appeal altogether.

(I)     The defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA

4

testing. Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.

The defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of any such biological evidence pursuant to 18 U.S.C. § 3600 in an attempt to prove defendant's innocence. The defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with defendant's counsel, and knowingly and voluntarily waives the right to have such DNA testing performed on the biological evidence in this case. Defendant fully understands that because defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(J) Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present indictment as well as any and all criminal violations about which the defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The defendant

5

understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon.

(K)   The United States of America and defendant hereby agree that any breach of this agreement by the defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the information, would: (a) not relieve the defendant of defendant's plea of guilty; (b) permit the government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this information; (c) permit the government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the government to utilize against the defendant in any subsequent judicial proceeding any and all statements made by the defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

6

(A)     That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant. He also agrees that the underlying Indictment in this case will be dismissed.

(B)     That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of the defendant's cooperation known to the sentencing court. If the defendant is not completely truthful and candid in his cooperation with the Government, the defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the imposition of sentence. In either case, the defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of the defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the defendant fail to cooperate truthfully

and completely with the Government, or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(C) Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the defendant in connection with defendant's cooperation and as a result of the defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the government agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in 18 U.S.C. § 924(e)(2)(B)(I), based on any information provided by the defendant in connection with the defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.

(D) If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range. But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

8



(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

STIPULATION OF FACTS:

A joint investigation by Macon Police Department, Federal Bureau of Investigation, Homeland Security Investigations, and Internal Revenue Service-Criminal Investigation was conducted on an establishment known as Sedona Tanning Salon, formerly known as Soft Hands Massage located at 1922 Riverside Drive, Macon, GA. The investigation revealed that the establishment(s) operated as a prostitution business from on or about March 1, 2008 through December 31, 2012.

9

During this time period, specifically between October 15, 2012 through December 25, 2012, Defendant did accept credit card payments for prostitution services she performed, including VISA and Mastercard credit cards while employed at Sedona Tanning Salon (when she arrived the establishment no longer accepted American Express). There was no other business conducted at Sedona Tanning and none of the girls were licensed to provide massages. Defendant agrees that at least some of these credit card transactions performed by her during the above-mentioned time frame affected interstate commerce as the transmissions for approval were submitted to states other than Georgia; thereby, affecting interstate commerce. Defendant also agrees that the prostitution services rendered by her while working at Sedona Tanning Salon did promote and facilitate the unlawful business activity of Sedona Tanning Salon, namely the operation of a prostitution business. The business opened seven (7) days a week. It operated from 9:00 a.m. and closed at 11:00 p.m. but if CHAE was there she would accept customers after 11:00 p.m.

Defendant admits that when she came to Sedona Tanning Salon to work "the boss" was Co-defendant CHAE. Initially Defendant worked at the establishment for approximately three weeks beginning mid-October, 2012. When Defendant left to take care of personal financial affairs CHAE told her she did not need her anymore as someone else had begun working. Sometime in November 2012, DYERSON telephoned Defendant and asked her to come back as a girl left the establishment after a police inspection about the business license. Defendant stayed for several weeks. CHAE was not usually at the establishment but frequently traveled to Florida. While employed at Sedona Defendant acknowledges that the girls paid $560.00 per week. Defendant was told that the money paid for her food for the week and the manager's tip. The money broke down to $40 per day for food and $40 per to the manager. The manager who worked there while she was

10

K.U.J

employed was known as "Auntie", namely DYRESON. Defendant has now been able to identify as defendant DYRESON. During the time period Defendant worked at the establishment there were usually three girls at a time working there. However, as time passed there were fewer customers and therefore fewer girls. One such girl working during the time she was there was defendant NOH who was known to her as "SUNNY". NOH was arrested when the police busted Sedona Tanning while Defendant was present. NOH came to the establishment when CHAE asked the "taxi driver" if he knew anyone who could work there. He brought NOH to the business. Defendant identified NOH in a photograph taken of her on the day of her arrest.

Defendant admits that the only patrons the business serviced were male. Sedona Tanning did not welcome female customers. While working there Defendant never saw a female customer come into the establishment. Defendant never saw anyone come to tan at Sedona Tanning, nor did she ever see the one tanning bed in use. The girls would take turns getting customers unless someone was specifically requested by a customer. The customers could enter Sedona Tanning through the front or the back door although most came in the back door. There was a doorbell at the back door to alert them when a customer arrived. DYERSON would greet the customers. Defendant further admits that Sedona Tanning charged $60 per hour for a massage. This was the initial fee charged upon entry into the business. This fee was kept by "the boss", co-defendant CHAE. "Extra" services, namely prostitution, were provided if the girls did not think the male patron was suspicious. Defendant, other female workers, Chae and Dyerson openly discussed suspicious feelings regarding customers and they were cautious of undercover law enforcement officers ; therefore, Dyerson and Chae knew that prostitution services were being offered at Sedona Tanning. CHAE admitted to Defendant that she provided services to the male customers on

11

*K.U.J*

occasion, specifically using her hand on the customer's penis. The following were a price list for services offered at the business: $40 for the girls to use their hands on the customer's penis; $80 for the girls to use their mouth on the customer's penis and $100 for sexual intercourse. The monies earned for prostitution, went to the working girls. The customers would sometimes pay more if they were pleased with the services. They also were allowed to pay less at the discretion of the individual girl if they did not have sufficient funds for the original fee. The working girls were not allowed to charge more than $100 for any "extra" service. This $100 policy was set by CHAE. Customers could be charged two $60 house fees if they wanted two different services. If a customer used a credit card for prostitution services, Chae or Dyerson would pay the girls from the house fees collected.

A daily ledger was kept at Sedona. The girls would write down their times as it related to the customers they serviced. CHAE told the girls to keep track of the ledger. On average the girls would see five to six customers per day. The money for deposits came from the customers who paid for massages and prostitution services. These monies were the ledger monies. DYERSON would direct Defendant to total the numbers at the end of the day as DYERSON could not write. Defendant would count the money and give it to DYRESON. DYRESON would hide the money in her room, which was separate from the working girls, and then later provide it for Defendant to make the deposit. DYRESON controlled all the cash at Sedona Tanning if CHAE was not there.

Condoms were used by Defendant and the other girls working at Sedona Tanning Salon for prostitution services. Each girl was required to purchase her own condoms as CHAE told Defendant that she did not provide them because it would get her in trouble. DYRESON were with the girls at times and observed them purchasing condoms. While working there the girls would

receive meals for their weekly payment which would be purchased by CHAE or DYERSON if CHAE was not there when groceries were delivered. Tori's Daddy served as the Korean taxi driver who delivered groceries to the establishment and provided transportation for some of the girls.

While Defendant was working at Sedona she was the only girl with a vehicle so she would be requested to run errands for CHAE. CHAE had hired a "taxi driver", namely the Korean male, to take money to the bank. CHAE began to ask Defendant to take deposits to the bank by calling DYERSON and having her ask Defendant personally. CHAE did not compensate Defendant or provide gas for her vehicle. DYERSON would give Defendant the monies for deposit along with the account number that she received from CHAE. Defendant made approximately five or six deposits while working at Sedona Tanning Salon. *Defendant knew of the use of interstate facility out for prostitution and did not tell authorities.* K.U.

The government and defendant agree that Defendant was a minor participant in the criminal activity and is entitled to an adjustment pursuant to §3B1.2(b).

(8)

ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this 16th day of January 2014.

MICHAEL J. MOORE
UNITED STATES ATTORNEY
MIDDLE DISTRICT OF GEORGIA

BY: _____
S/VERDA M. COLVIN
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 018901

13

K.U.J

I, KI UN JORDAN, have read this agreement and had this agreement read to me by my attorney, SAMUEL HARRISON. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

*(signature)*
KI UN JORDAN
DEFENDANT

I, SAMUEL HARRISON, attorney for defendant, KI UN JORDAN, have explained the indictment and information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

*(signature)*
SAMUEL HARRISON
ATTORNEY FOR DEFENDANT

14